IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| EARL D. JOHNSON, JR., | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-17-3401 |
| LT., RICHARD ROBINETTE, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Earl D. Johnson brings this civil action against Defendants Lt. Richard Robinette and Officer Chad Zimmerman for violation of his civil rights under the Fourth and Eighth Amendments of the United States Constitution, made applicable to the States by the Fourteenth Amendment, and pursuant to 42 U.S.C. § 1983. ECF No. 34. Pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 70.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' Motion is granted.

**I.    BACKGROUND[2]**

Plaintiff Earl D. Johnson, Jr., is a Maryland Department of Corrections prisoner, and is an inmate at the Maryland Correctional Training Center ("MCTC"), located in Hagerstown, Maryland. ECF No. 34 at 2–3.[3] Defendant Lieutenant Richard Robinette is a corrections officer employed by Maryland Department of Corrections. *Id.* at ¶ 8. Defendant Officer Chad

---

[1] Also pending before the Court are Defendants' Motions for Extension of time to file response/reply as to response in opposition to motion, ECF No. 85, ECF No. 91, which are granted.
[2] Unless otherwise noted, the following facts are undisputed or construed in the light most favorable to the nonmoving party.
[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

1

Zimmerman is a corrections officer employed by Maryland Department of Corrections. *Id.* at ¶ 9. Plaintiff alleges that, at all times relevant to the Amended Complaint, Robinette was Zimmerman's supervisor. *Id.* at ¶ 15. Plaintiff originally alleged claims against both Defendants in their official and individual capacities.[4] *Id.* at ¶¶ 8, 9.

Plaintiff alleges that he was housed on the HU-4-C tier of the MCTC facility, where he had a double cell that he shared with another prisoner. *Id.* at ¶¶ 11, 12. He alleges that in 2017, "the corrections officers who were regularly assigned to [his] tier of the facility were normally on duty from Wednesday through Monday and were off on Tuesdays and Wednesdays." *Id.* at ¶ 13. He states that the Defendants were "routinely assigned to cover his tier on Tuesdays and Wednesdays when the regular officers were off." *Id.* at ¶ 14. Plaintiff goes on to allege that "on a weekly basis … Defendants would 'shake down' Plaintiff by searching his cell and his person with the intention of harassing and humiliating him." *Id.* at ¶ 16.

Specifically, Plaintiff states that between the dates of approximately August 8, 2017, to October 3, 3017, Zimmerman strip searched him on a weekly basis looking for wine or fermented juice. *See* Pl. Decl. 83-1 at ¶¶ 19–21; Pl. Dep. ECF 70-8, 102:4–20, 118:7–16, 120:7–19, 141:9–19, 142:6–18. In reference to each search Plaintiff asserts the following: on the first search that allegedly occurred on or about August 8, 2017, Plaintiff cannot remember if Officer Zimmerman touched his person, and he states that he heard Robinette's voice. Pl. Dep. ECF 70-8, 100:16–101:11. On the second search that allegedly occurred on or about August 15, 2017, Plaintiff states that Zimmerman "touched his buttocks, the top part of his posterior" while reaching for Plaintiff's shirt, but he "grabbed wrong." He also states that Zimmerman grabbed for his boxers "quite down low like [Plaintiff] had something on the side of it." He goes on to

---

[4] This Court has previously dismissed Plaintiff's claims against the Defendants in their official capacities, *see* ECF No. 39, and evaluates this motion against Defendants solely in their individual capacities.

state that Robinette was present for this search and asked him what was going on. *Id.* at 123:21–125:6. On the third search that allegedly occurred on or about August 22, 2017, Plaintiff states that Zimmerman "touched his balls because there was a lint ball or something on it," and that Zimmerman did not touch him anywhere else. He also states that Robinette was present for this search and looked in the cell. *Id.* at 132:6–133:21. On the fourth search, that allegedly occurred on or about August 29, 2017, Plaintiff does not present any evidence that Zimmerman touched his person, but states that Robinette was present and was the one to handcuff him. *Id.* at 134–140. On the day of the fifth search, on or about September 6, 2017, Plaintiff does not remember if Zimmerman touched his person. He states that Robinette was there and that was the incident where he was cited for having two oranges, and Robinette was the one to sign the ticket. *Id.* at 146:20–147:14. On the day of the sixth search, on or about September 13, 2017, Plaintiff states that he began looking at different avenues and tried to file a complaint or a grievance regarding the strip searches. *Id.* at 149:11–20. On the day of the seventh search, on or about September 20, 2017, Plaintiff states that Zimmerman grabbed the outside of his boxers because Zimmerman thought he had something in there because "he was taking too long." Plaintiff said Zimmerman's hand was "by the top of his buttocks, his thumb was inside his shorts." He goes on to state that Robinette was there because he could see his shadow. He also alleges that a couple of days after this incident he asked Robinette about the sexual harassment policy to which Robinette said they did not have one. *Id.* at 157:6–158:8; 160:5–12. On the date of the eighth search, on or about September 27, 2017, Plaintiff states that "he took his time taking his clothes off [and] Zimmerman grabbed his boxers again and had [Plaintiff's] whole junk tied up in his hand … [Zimmerman grabbed] over the [Plaintiff's] clothing, [while saying Plaintiff] was taking too long." He alleges that Robinette was present for the search and told Plaintiff he had to comply.

*Id.* at 167:16–168:12. On the date of the ninth search, on or about October 3, 2017, Plaintiff states that all four of Zimmerman's fingers were on his butt when he tried to grab Plaintiff's boxers because Plaintiff did not want to turn over the elastic on his boxers, and also that Zimmerman ripped the boxers. He states that Robinette was present during this incident. *Id.* at 179:12–181:20.

Plaintiff also presents the deposition of Stephen Urquhart, another inmate at the facility. Urquhart testifies that he has never seen Plaintiff get strip searched, and the only information he has that a strip search occurred is from Plaintiff and another inmate, Reggie. Urquhart Dep., ECF No. 83-8, 81:9–82:7.

Plaintiff also alleges that Defendant Zimmerman "sexually assaulted [him] by inappropriately and gratuitously touching [Plaintiff's] naked buttocks and scrotum, and by making comments of a sexual nature, including but not limited to comments regarding [Plaintiff's] genitalia." ECF No. 34 at ¶ 23. Plaintiff goes on to state that "Officer Zimmerman had no valid penological basis for subjecting Mr. Johnson to strip searches or for touching his unclothed genitals and buttocks during cell searches which were purportedly conducted to look for alcohol or fermentable materials." *Id.* at ¶ 27.

Plaintiff then alleges that "Lieutenant Robinette was aware that Officer Zimmerman was repeatedly strip-searching Mr. Johnson … and that [Robinette] directly observed Officer Zimmerman strip searching Plaintiff." *Id.* at ¶ 28. Plaintiff goes on to state that Robinette was aware that Zimmerman's "stated basis for searching [Plaintiff] was suspicion of alcohol or fermentable materials." *Id.* at ¶ 29. He also states that Robinette knew Zimmerman "did not have any justification for strip-searching [Plaintiff] on these grounds, but nonetheless Robinette did not at any time attempt to stop Officer Zimmerman's 'improper' strip searches of [Plaintiff]." *Id.*

at ¶ 30. The Defendants deny that any strip searches of Plaintiff occurred during the time-period relevant to the Amended Complaint. ECF No. 70-2 at 3. There is no dispute that Robinette did not personally touch or physically involve himself in the alleged strip searches of Plaintiff. *See* ECF No. 70-3, RFA Nos. 4–16 (Robinette was not inside Plaintiff's cell, did not personally order, instruct, or request that Plaintiff remove his clothes, did not personally make inappropriate comments towards him, and did not touch him).

In October 2017, Plaintiff filed an Administrative Remedy Procedure ("ARP") regarding damage to his radio and CD player. Pl. Decl., ECF No. 83-1 at ¶ 47; ECF No. 83-1, Exhibit C, DEF B 0000010–13. Plaintiff also states his ARP included information related to the repeated shakedowns. Pl. Decl., ECF No. 83-1 at ¶ 47. To comply with procedure, an ARP request must be filed no later than 30 days after the date of the incident or the date the inmate first gained knowledge of the incident, whichever is later. COMAR 12.02.28.09. If the request is denied a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR 12.02.28.14. If the appeal is denied, the prisoner has 30 days to file a grievance with the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Serv. §§ 10-206, 10-210; COMAR 12.02.28.18, 12.07.01.02, and 12.07.01.05.

Plaintiff states that an administrative infraction hearing was held in October 2017 based on the three rule infractions alleged against him in Officer Zimmerman's Notice of Inmate Rule Infraction. Pl. Decl., ECF No. 83-1 at ¶ 48. He states that during the ARP hearing, he informed the hearing officer of Zimmerman's harassment, but the officer cut him off, telling him he could address the sexual harassment claim though filing a complaint with the IGO. *Id.* at ¶ 49. The hearing officer dismissed one of the three alleged rule infractions that were alleged against Plaintiff and found him guilty of the two remaining infractions. *Id.* at ¶ 50. Plaintiff states that

"the hearing officer told him his ARP grievance regarding Defendants' harassment had been dismissed." *Id.* at ¶ 51. He goes on to state that he appealed the decision to MCTC's warden who sustained the decision. *Id.* at ¶ 52.

Plaintiff states that he submitted a complaint to the IGO on November 7, 2017, which was marked as "Received" on November 13, 2017. *Id.* at ¶ 55. Plaintiff's complaint reported sexual harassment by both Robinette and Zimmerman, and that he wanted payment for his broken boom box and remote. ECF No. 83-1, Exhibit C, DEF B 0000005–0000006. Plaintiff goes on to state that the IGO informed him he needed to submit documentation related to his ARP, but the letter did not mention his sexual harassment grievance at all. He states there was no ARP addressing the sexual harassment claims against Defendants because he knew those could not be addressed through the ARP process. He was later informed that his IGO grievance was dismissed for "failure to provide the requested information." *Id.* at ¶¶ 56–58; ECF No. 83-1, Exhibit C, DEF B 0000014.

Plaintiff claims that the strip searches "deprived Plaintiff of his constitutionally-protected rights to be free from improper and unreasonable searches of his person, and to be free of cruel and unusual punishment, guaranteed respectively by the Fourth and Eighth Amendments to the United States Constitution, and made applicable to the States through the Fourteenth Amendment." ECF No. 34 at ¶ 43. Plaintiff seeks general, compensatory, and punitive damages against each Defendant, jointly and severally, in an amount to be determined at trial. *Id.* at 8.

## II.    STANDARD OF REVIEW

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299,

302 (4th Cir. 2006). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one "that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may rely on only facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Defendants' Motion for Summary Judgment argues that (1) Plaintiff has failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") for his Fourth Amendment claim, (2) Plaintiff has not alleged sufficient facts to state a claim for § 1983 liability against Robinette, (3) Plaintiff has failed to state a claim under the Fourth Amendment,

and (4) Plaintiff has failed to state a claim under the Eighth Amendment. *See* ECF No. 70-1.[5] The Court will address each argument in turn.

### A. Cause of Action – Violation of Civil Rights (42 U.S.C. § 1983)

#### 1. Administrative Remedies under PLRA

Defendants allege that Plaintiff has failed to exhaust his administrative remedies under PLRA for his Fourth Amendment claim. Under PLRA, "as amended, prisoners must exhaust 'such administrative remedies as are available' prior to filing suit in federal court challenging prison conditions." 42 U.S.C. § 1997e(a); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "To be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond." *Moore v. Bennette*, 517 F.3d at 725. To decide whether Plaintiff has failed to exhaust his administrative remedies, the Court must look at the history of the Prison Rape Elimination Act.

In 2003, Congress passed the Prison Rape Elimination Act, 34 U.S.C. § 30301 et seq. ("PREA"), to "establish a zero-tolerance standard for the incidence of prison rape in the United States," to "increase the accountability of prison officials," and "protect the Eighth Amendment rights of Federal, State, and local prisoners." *Id.* § 30302. Pursuant to the Act, the Department of Justice issued the "National Standards to Prevent, Detect, and Respond to Prison Rape" which is codified at 28 C.F.R. Part 115 ("PREA Standards"). The PREA Standards mandate "zero tolerance toward all forms of sexual abuse and sexual harassment," 28 C.F.R. § 115.11, and

---

[5] Defendants also allege that Plaintiff fails to state a claim for damages, and that Defendants are entitled to qualified immunity. *See* ECF No. 70-2 at 20, 33. However, the Court need not discuss these arguments in its opinion as it can dismiss the case based on the arguments discussed.

8

establish standards and definitions to inmate sexual abuse, including by prison staff. *See*, 28 C.F.R. § 115.6(2). PREA Standard 115.52 permits an agency to forego compliance by exempting an inmates PREA-related claims from its remedial scheme. 28 C.F.R. § 115.52(a).

Here, the Department of Public Safety and Correctional Services ("DPSCS"), does not have a remedial scheme compliant with § 115.52 and therefore exempts an inmate's PREA related claims on that basis. *See* ECF No. 83-6, DEF A 002611, 3(C) "The Department does not permit the use of an informal resolution process or ARP to resolve complaints of rape, sexual assault, sexual harassment, sexual abuse, sexual misconduct, inmate on inmate sexual conduct, or other areas afforded protections by standards established under the authority of the Prison Rape Elimination Act (PREA) and related Department procedures." *See also* ECF No. 83-6 DEF A 002667 "28 C.F.R. 115.52 Exhaustion of administrative remedies: [t]he Department shall be exempt from this standard because it does not have administrative procedures to address inmate grievances regarding sexual abuse." DPSCS defines "sexual abuse of an inmate by an employee to include 'intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the employee has the intent to abuse, arouse, or gratify sexual desire.'" ECF No. 80-6, DEF A 002546–47, 10(e). DPSCS defines sexual harassment to include "repeated verbal comments or gestures of a sexual nature to an inmate by an employee, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures." *Id.* at DEF A 002546–47, (12).

As to Zimmerman, Plaintiff has alleged that he "inappropriately and gratuitously touch[ed] [Plaintiff's] naked buttocks and scrotum, and [made] comments of a sexual nature, including but not limited to comments regarding [Plaintiff's] genitalia." ECF No. 34 at ¶ 23.

Plaintiff goes on to state that "Officer Zimmerman had no valid penological basis for subjecting [him] to strip searches or for touching his unclothed genitals and buttocks during cell searches which were purportedly conducted to look for alcohol or fermentable materials." Id. at ¶ 27. Because Plaintiff's allegations against Zimmerman fall within DPSCS's definition of sexual abuse, and DPSCS exempts sexual abuse from its administrative reporting procedures, there were no "available" remedies for Plaintiff to exhaust and Plaintiff's claims cannot therefore be dismissed on this ground.

      Even if Plaintiff was required to submit a grievance, he satisfied that requirement when he submitted his grievance through the IGO reporting process. ECF No. 83 at ¶ 49; ECF No. 83-1, Exhibit C, DEF B 0000005-0000006. After submitting his grievance, Plaintiff asserts that he was told he needed to submit a copy of his ARP complaint and submit documentation that he had exhausted the ARP process, even though the ARP is not appropriate for sexual assault grievances. ECF No. 83 at ¶¶ 51–52. Despite submitting his previous ARP complaint, Plaintiff was notified that his IGO grievance had been dismissed. Id. ¶¶ at 52–53; ECF No. 83-1, Exhibit C, DEF B 0000014. This dismissal would be a final decision and as such, Plaintiff has met his exhaustion requirements as to his sexual abuse claims.

      As to Robinette, Plaintiff does not allege "rape, sexual assault, sexual harassment, sexual abuse, sexual misconduct, inmate on inmate sexual conduct, or other areas afforded protections by standards established under the authority of the PREA." ECF No. 83-6, DEF A 002611, 3(C). Because Plaintiff's claims against Robinette do not fall within PREA, and because Plaintiff did not otherwise file an ARP related to other conduct that he alleges against Robinette, Plaintiff has failed to exhaust his administrative remedies, and his claims against Robinette must be dismissed.

### 2. Plaintiff's § 1983 Claims Against Robinette

The Defendants argue that Plaintiff's § 1983 claims against Robinette must fail. Section 1983 provides a cause of action against "[e]very person who," under color of any statute or state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to a deprivation" of a federally protected right. 42 U.S.C. § 1983. There is no dispute that Robinette did not physically participate in the alleged strip searches of Plaintiff. *See* ECF No. 70-3, RFA Nos. 4–16 (Robinette was not inside Plaintiff's cell, did not personally order, instruct, or request that Plaintiff remove his clothes, did not personally make inappropriate comments towards him, and did not touch him). To assert § 1983 liability, Plaintiff alleges supervisory and bystander liability against Robinette based on his "actual knowledge, and tacit or actual approval of and/or participation in the alleged harm" to Plaintiff. ECF No. 83 at 16. Robinette cannot be held liable under either theory.

"Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Courts in this jurisdiction have recognized that "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)). Liability is determined "by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Id.* (quoting *Slakan*, 737 F.2d at 376). Three elements must be met to establish supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate

11

as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* at 799. "To satisfy the requirements of the first element, a plaintiff must show that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* In establishing the second element, "the plaintiff assumes a heavy burden in establishing deliberate indifference because: ordinarily, the plaintiff cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* Finally, "[c]ausation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id.*

Bystander liability is premised on "a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's Cnty.,* 302 F.3d 188, 203 (4th Cir. 2002). When "a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly." *Id.* As a general proposition, these courts have concluded that an officer possesses "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers." *Id.* at 203–04. "[A] bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer. If the bystander lacks such specific knowledge, he cannot be a

participant in the unlawful acts, and the imposition of personal liability is impermissible." *Id.* at 203 n.24

The analysis for both supervisory and bystander liability overlap here and thus will be discussed jointly. As to the first element under supervisory liability, Plaintiff has failed to prove that Zimmerman was engaged in "conduct that posed a pervasive and unreasonable risk of injury" and that Robinette was aware of any such risk. Of the nine occasions when the alleged strip searches occurred, Zimmerman touched Plaintiff's person on or about four of those occasions and touched Plaintiff's clothing on or about three of those occasions. In each one, Plaintiff's evidence shows that Zimmerman only touched Plaintiff's person or his clothing when he thought Plaintiff to be hiding something. Plaintiff also states that on one or more of those occasions Zimmerman made sexual comments. To allege supervisory liability, Plaintiff states that on some of the occasions where he was strip searched, he heard Robinette's voice. On other occasions he saw Robinette peak into the cell. And finally, on at least one or two occasions Robinette spoke directly to the Plaintiff to ask what was going on or to tell him to comply. Plaintiff further states that a couple of days after the seventh strip search incident, he asked Robinette if there was a policy for sexual harassment, to which Robinette responded no. Pl. Dep., ECF No. 70-8, 160:5–12. Notably, Plaintiff presents no evidence of Robinette's knowledge of any propensity for unlawful action by Zimmerman. The evidence does not support a finding that Zimmerman was engaged in conduct that posed a risk of constitutional injury, nor that Robinette was aware of a pervasive and unreasonable risk of constitutional injury to Plaintiff. DPSCS confidential policy states that an inmate may be strip searched. ECF No. 71-2, Exhibit C, DEFA004921, at 17 (under seal). Therefore, it does not follow that Robinette's knowledge of a strip search also equates to his knowledge of an "unreasonable risk" of constitutional injury.

Furthermore, Plaintiff asking Robinette about a sexual harassment policy does not imply that Robinette would know that Plaintiff was specifically asking as it pertained to Zimmerman, or that there was an unreasonable risk of constitutional injury to Plaintiff in that setting. Therefore taking the evidence in the light most favorable to Plaintiff, it cannot be said that Robinette was aware of any unreasonable risk of constitutional injury to Plaintiff. *See Randall v. Prince George's Cnty.*, 302 F.3d at 207 (holding that Plaintiffs could not meet the first prong of supervisory liability where they presented no evidence that the Defendant knew about any propensity for unlawful action by his subordinates, and provided no evidence that he had an opportunity to prevent recurrences, only evidence that Defendant "had to know his fellow officers were committing constitutional violations and yet chose to do nothing.").

Plaintiff has also failed to meet the first prong of bystander liability. Even if Robinette knew Plaintiff was being strip searched, and that Plaintiff was interested in the policy for sexual harassment, it does not follow that he knew that Zimmerman had sexually assaulted Plaintiff. Therefore, Robinette was not "confronted with a fellow officer's illegal act." *Id.* at 204 (holding that bystander liability could not apply where supervisors knew the plaintiffs were present in the police station, and also that individuals were being detained in the station against their will, but not that the supervisors knew these two groups were one in the same). Seeing as Robinette cannot be held liable under any supervisory or bystander liability theory, all of Plaintiff's claims against Robinette must be dismissed.

### 3. Plaintiff's Fourth Amendment Claim

Defendants argue that Plaintiff has failed to state a Fourth Amendment Claim as to each Defendant.[6] ECF No. 70-2 at 18. The Fourth Amendment protects "[t]he right of the people to be

---

[6] As discussed above, all claims against Robinette must be dismissed.

secure in their persons ... against unreasonable searches and seizures." U.S. Const. Amend. IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018) (quoting *Schmerber v. California*, 384 U.S. 757, 767 (1966)). "The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citations omitted). "A search is lawful only when it is reasonable." *Sims v. Labowitz*, 885 F.3d at 261. When a search involves "movement of clothing to facilitate the visual inspection of a [person's] naked body, the search qualifies as a type of sexually invasive search." *Id.* (quoting *United States v. Edwards*, 666 F.3d 877, 882–83 (4th Cir. 2011) (citations omitted)). To determine whether a sexually invasive search is reasonable, the Court employs the test adopted in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Under the *Bell v. Wolfish* test, "a court is to consider the following factors to determine the reasonableness of the search: (1) the scope of the particular intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place in which the search was performed." *King v. Rubenstein*, 825 F.3d at 214–15; *Sims v. Labowitz*, 885 F.3d at 261. The test for reasonableness "is not capable of precise definition or mechanical application" and requires "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell,* 441 U.S. at 559. The Fourth Circuit has recognized that a sexually invasive search "constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual." *Sims v. Labowitz*, 885 F.3d at 261 (citations omitted). "When the scope of a search exceeds a visual inspection of an individual's naked body,

the magnitude of the intrusion is even greater." *Id.* Here, the *Wolfish* factors weigh in favor of finding the search reasonable.

The first two factors are best understood in conjunction. Taking all reasonable inferences in Plaintiff's favor, on several occasions Zimmerman touched plaintiff's "buttocks, balls, and boxers" and on one or more occasions made comments of a sexual nature. *See* Pl. Decl., ECF No. 83-1, at ¶¶ 23, 24, 35. However, because the search involved Zimmerman touching Plaintiff's clothing or person on occasions when he thought Plaintiff to be hiding something, the search was reasonable. Plaintiff was not at risk of harm or pain, or any risk to his health, and Plaintiff was always searched within the confines of his cell where no one could see him and was permitted to remove his own clothing. Pl. Dep., ECF No. 70-8, 146:5–8; 177:16–18. *See, cf., King v. Rubenstein*, 825 F.3d at 215–16 (finding that the first two factors counseled against reasonableness because the surgery involved "risk, trauma, and pain" and posed a risk to plaintiff's health); *Sims v. Labowitz*, 885 F.3d at 261 (finding that the first two factors counseled against reasonableness because the Defendant wanted Plaintiff to masturbate so he could photograph the Plaintiff's penis in a sexually aroused manner, and he forced Plaintiff to do so in the presence of three other armed officers). Therefore, these two factors weigh in favor of reasonableness.

Turning to the third factor, the justification for initiating the search, Plaintiff states that the defendants had no penological justification for the strip searches. Pl. Decl., ECF No. 83-1 at ¶ 22. Pursuant to DPSCS confidential policy, an inmate may be strip searched when a "less intrusive search is performed and the results are inconclusive or indicate that the inmate possesses contraband." ECF No. 71-2, Exhibit C, DEFA004921, at 17 (under seal). However, Plaintiff asserts that a less intrusive search (a pat down) was only conducted twice, and he was

16

strip searched nine times. *See* Pl. Dep., ECF 70-8, 108:11–109:9. Plaintiff also testified in his deposition that he asked Zimmerman why he was being strip searched if he was supposedly looking for fermented juice and Zimmerman replied that he could do what he wanted. Pl. Dep., ECF 70-8, 98:14–17. Plaintiff also states that although he shared a cell with another inmate, his cell mate was never strip searched. *Id.* at 137:3–9. Of the two occasions that Plaintiff was cited with an infraction, neither of the items found were a result of the strip search. *See Id.* at 144:9–19; 185:9–186:11. Thus, there is slight evidence lending support to Plaintiff's allegations that the strip searches were meant to harass him, *see King v. Rubenstein*, 825 F.3d at 216–17 (holding that the justification was not reasonable where it was inconsistent with the policy directive plaintiff was found in violation of and where others were not held accountable in line with the policy), however, it is undisputed that the primary purposes for the searches was for contraband items, which provides a justification for the searches.

The fourth factor looks at where the search was performed. The location of the search was reasonable. Plaintiff states that the searches were always performed inside his cell where no one could see him, with only Zimmerman inside the cell with him. Balancing all of the relevant factors leads the Court to conclude that the search in this context was reasonable. As such, the Court must dismiss Plaintiff's Fourth Amendment claims.

### 4. Plaintiff's Eighth Amendment Claim

Defendants also allege that Plaintiff has failed to state an Eighth Amendment Claim against Defendants. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "In the prison context, it protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). An inmate's Eighth Amendment claim involves a subjective component and an objective

component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.* (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). To establish the subjective component, the Plaintiff must establish that the prison official acted with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A Plaintiff establishes deliberate indifference by "showing that the prison official 'knew of and disregarded an excessive risk to inmate health or safety.'" *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837) (internal citations omitted). Deliberate indifference is "a very high standard, which requires that a plaintiff introduce evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Id.* (quoting *Farmer*, 511 U.S. at 837). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* To satisfy the objective component, the Plaintiff "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" *Danser*, 772 F.3d at 346. Although not "every malevolent touch by a prison guard gives rise to a federal cause of action … the Eighth Amendment [prohibits conduct that is] repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992). Actions are repugnant to the conscience of mankind if they are "incompatible with evolving standards of decency" or involve "the unnecessary and wanton infliction of pain." *Id.* at 10.

      Plaintiff has failed to establish that he can meet the subjective component of his Eighth Amendment claim. Taking the facts in the light most favorable to Plaintiff, Plaintiff cannot show that Zimmerman "knew of and disregarded an excessive risk" to Plaintiff's health or safety.

*Danser,* 772 F.3d at 347. At best, Zimmerman acted "aggressively" on occasions where he thought Plaintiff to be taking too long to remove his clothing during a strip search, or where he thought Plaintiff was hiding something in his clothing. On other occasions, Zimmerman did not touch Plaintiff's person and solely touched his clothing. The one instance where it could be said that Zimmerman "over-stepped" was when he "grabbed Plaintiff's junk over his boxers." Even when combining this incident with all the other alleged searches, it is not sufficient to allege that Zimmerman knew of any risk to Plaintiff. Furthermore, precedent makes clear that it is not enough that a prison official be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, but he must also draw that inference. *Id.* Here, even as alleged in Plaintiff's deposition, it appears that Zimmerman only touched Plaintiff or his clothing at times when he thought Plaintiff was hiding something, which negates the likelihood that Zimmerman would have drawn any inference of a substantial risk of serious harm. (*See* Pl. Dep. ECF 70-8, 132:6–12, Zimmerman touched his testicles because there was a lint ball or something on it; 123:21–125:6, Zimmerman grabbed his boxers because he thought he had something on the side of it; 157:6–158:8, Zimmerman grabbed the outside of his boxers because he thought Plaintiff had something in there; 179:12–181:20, Zimmerman's fingers were on Plaintiff's butt while trying to grab Plaintiff's boxers because Plaintiff did not want to turn over the elastic on his boxers). As a matter of law, this evidence is not enough to meet the strict standard required by the Eighth Amendment. As such, the Plaintiff's Eighth Amendment claims against Defendants cannot survive the motion for summary judgement and all of Plaintiff's claims must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. A separate Order follows.

Date: <u>September 30, 2022</u>                              ____/s/_____
                                                                                    GEORGE J. HAZEL
                                                                                    United States District Judge